We'll proceed to hear argument in the last case on calendar argument today, which is 24-6323 Lupita Gallegos v. United States Department of Commerce. And we will hear first from Mr. Simon when you're when you're ready. You may proceed. Good morning and may it please the court I'd like to reserve five minutes for rebuttal. The decision of the Merit System Protection Board should reverse should be reversed because it is both contrary to law and unsupported by substantial evidence. First I'd like to point to the board's precedent in Bourninkopf versus DOJ, which set forth eight factors to be analyzed when analyzing hearsay. Does that mean that when they write the decision they have to mention the eight factors and tick through or is it sufficient for purposes of our review that we can examine the decision and see that the substance of the analysis required by that decision has been done and is present there's a basis for it in the administrative record? I believe it's necessary for them to cite the factors, your honor. So you view it as a way it's a rule about how they have to write decisions? Yes, your honor. Do you have a case where we've said that? No, your honor. Counsel, you indicated that the board's decision was not supported by substantial evidence. I guess what I'm wondering is why isn't the fact that she had provided unauthorized access, dabs for one, had confronted another individual and she was warned not to do that specifically and again a testimony about how she behaved loudly and unprofessionally. Why isn't that independent of, you know, any other reason, a basis for them to have fired her? The reason for that, your honor, is the very short flash bang time between her established report of whistleblowing on Saturday, March 7, 2020, and the decision on Monday, March 9, that she should be terminated. She was called in and terminated. Additionally, on the dabs issue, we'd like to point out two things. One, the office manager was told that she had shared her dabs password inappropriately with the employee that she was training. Additionally, the... I'm sorry, your point is what? It's still not, she wasn't supposed to do that? Well, his understanding was that she had shared her password inappropriately and he testified that if she hadn't shared her password, he didn't have a concern with it. Additionally, we'd like to point out that Mr. David Lerma, the individual that attempted to bully her and run her off the job site on her first day at work, specifically asked the petitioner, Ms. Gallegos, to train this individual and that he's the one that immediately turned around and reported this matter to the office manager. Furthermore, Mr. Lerma did not testify on this. He was available. He appeared at the administrative hearing and he did not testify on this score. Now only evidence is his text message, which he sent to Mr. Paul... Mr. Paul... I guess what I need to understand is, are you contesting that those were facts that the board considered and that those facts are incorrect or are you saying that those facts are insufficient for the dismissal? What I'm saying is on the sufficiency of the evidence. What I'm saying is this, that the consistently hostile responses to her reports of improper conduct taken as a whole together with the immediacy of her termination on the first business day after she reported Mr. David Leszczynski, Scott Leszczynski, for refusing to hire the fully qualified disabled veteran and then ordering her to record a false reason for the decision to non-hire. On the very next business day, she's called in and told that she's terminated. We believe the hostile response to her initial report of being bullied by Mr. Lerma on October 25th. She meets with the manager the following Wednesday and the action they take is to instruct Mr. Pruitt to start keeping a log on the petitioner, Ms. Gallegos, but they make no such a... I want to understand clearly, you said that there were both errors of law and fact and you're discussing the facts in some detail. I want to make sure I understand what are all the errors of You've identified the one on the morning cough case. What other errors of law do you contend in the board's decision? First, we assert that the board did not consider the first four morning call factors. That is the availability of the witness to testify, the form of the statement, whether oral or written, signed or unsigned, sworn or unsworn, explanation as to whether or not, whether as to why a written or signed or a sworn statement was not taken and whether the hearsay declarant was disinterested or the matter was a routine report. Additionally, we believe they made a clear error when they speculated as to the cause for the garbled documentation provided to the petitioner, Ms. Gallegos, after she was terminated in response to her specific request for some documentation so she could apply for unemployment compensation. She testified without rebuttal that she received unintelligible documentation in response to her request for documents for her unemployment. And she provided copies of those documentations, which are in the record. The agency, the Department of Commerce, presented no evidence at all on this point, offered no testimony, and the administrative judge found that it must have been a processing error. That's clear speculation unsupported by any evidence. We believe that that is error. Additionally, we also believe that the board misapplied the first of the three CAR factors under CAR versus Social Security Administration on the issue of pretext. And that is a sufficiency of the evidence. We believe if you look at the evidence as a whole, look at the consistent hostile responses to her reports of improper conduct, and the immediacy of her termination between a report regarding Mr. Leszczynski's refusal to hire a fully qualified disabled veteran, and then ordering her to record a false reason for the non-hire. Mr. Leszczynski did not testify. And there's no explanation for his non-appearance. There is no signed or sworn statement from Mr. Leszczynski in the record. So the petitioner's testimony regarding what happened between her and Mr. Leszczynski on Saturday, March 7, 2020 is entirely unrebutted. Additionally, the petitioner testified without rebuttal that she was immediately singled out and instructed by Mr. Leszczynski that she was not performing her duties, that she should get to work. And she told him that the reason she wasn't making calls at that moment was she was waiting for folders in order to make hiring calls to hire enumerators. And that he did not similarly reprimand other people who were also waiting around for folders with names to call to hire enumerators. We also want to point out that Mr. Pruitt took the side of Mr. Drake on the February 14, 2020 altercation argument between Petitioner Gallegos and Mr. Drake. Mr. Pruitt took Drake's side of it on this matter, and he recorded in his log that he was keeping pursuant to the direction of manager with him. He recorded this will be, quote, Lapita's last chance, but he did not. You would ask for five minutes. Yes, sir. Okay. All right. Great. Thank you, Council. We'll hear then from Ms. Bomankova. Did I pronounce that correctly? Okay, great. Good morning, Your Honor. May it please the court. Because the board found that Ms. Gallegos made a prima facie case of whistleblower retaliation here, it shifted the burden to the agency to prove by clear and convincing evidence that it would have terminated Ms. Gallegos regardless of the protected disclosure that the board found that she made. And therefore, the dispositive finding in this case by the board is that the agency, in fact, met that burden of proof by clear and convincing evidence. In response to his argument that there's legal error because, you know, the agency itself has articulated an eight-factor standard for evaluating hearsay evidence, and hearsay evidence was an important part of the board's decision, but there's no discussion of, you know, no acknowledgement of the test and the factors, and so why isn't that a legal error? It's his argument. What is your response? So I think Bornikoff is largely a red herring in this case, frankly, for a couple of reasons. First of all, Bornikoff itself addresses a fairly narrow set of circumstances. And the set of circumstances that Bornikoff addresses is when the burden of proof at the MSPB is often more than substantial evidence. It's usually either preponderance or clear and convincing. And so if you have, you know, you're trying to establish fact A and decide whether fact A has been proven by preponderance of the evidence, and on one hand, you only have hearsay evidence that says fact A, and you have live testimony that says fact not A. When you're trying to decide whether or not there is nevertheless preponderance of the evidence for fact A, you have to evaluate the probative value of the hearsay evidence, and the board sort of surveyed the case law and came up with these eight factors that it drew from the existing case law of the kinds of things you have to think about when you're evaluating that kind of sort of In this case, by and large, that was not an issue. There was hearsay evidence. We don't disagree with that. But the board, for most of these, the factual findings that it made, actually found that Ms. Gallegos' own live testimony corroborated the fact findings. And that's when she appealed from the administrative judge to the full board. The board also found, one, that the administrative judge properly sort of considered the probative value of the hearsay evidence where she relied on it and looked for corroborating evidence, and that, in fact, for most of the issues that she raises, Bornehoff just doesn't sort of come into play at all because the evidence was corroborated by Ms. Gallegos' own live testimony. And that's particularly true, Your Honor, for the evidence that the board relied on in terms of its conclusion that there was strong evidence under CAR Factor I that weighed heavily in favor of the agency that it would have terminated Ms. Gallegos, regardless of her protected disclosure. So for most, if not all, of the specific instances that the board identified and held that she behaved in a disruptive and unprofessional manner, she noted that Ms. Gallegos' own testimony sort of corroborated the fact finding. And where the board disagreed with Ms. Gallegos, and where the board found Ms. Gallegos to be not a credible witness, was not in the actions that she took, but the inferences that she tried to draw from that actions. And that's where the board made a specific demeanor-based credibility determination, which is virtually unreviewable on appeal, because obviously this court doesn't get to see the witnesses testify live, that her sort of interpretation of what was happening, that was not reliable and would not be what a reasonable person would infer from the circumstances. So I don't think, I think Borna Hoppe really just doesn't apply. Was there any evidence in the record other than the letter, the garbled letter itself, as to how the letter came to be garbled? There was not, although I disagree with the characterization that that was the board making an affirmative finding based on no evidence. I think what the board was doing there was rejecting on a credibility determination Ms. Gallegos' inference that she tried to draw from that garbled document. It says on its face, the document appears to have been the result of a processing error that misconfigured a notification of personnel action form. That just seems purely speculative. I mean, that's a guess, but there's, you just said there's nothing in the record to support an inference that there was some kind of a processing error that did that, is there? Well, I mean, the way that's written, it suggests that the administrative judge relied on the documents itself. But I think really the argument that Ms. Gallegos was trying to make is that the inference that she wanted to draw from that garbled documentation, we don't dispute the documentation was garbled. And obviously it's in the record, we can see that it was garbled. Is there anything in the record to indicate that that was corrected promptly? I don't know that that was... Because she needed the letter for anonymity. I don't know that there was anything in the record as to whether she requested a replacement. I know she got a replacement document through the EEOC process that she filed. I believe that is, the board does mention that in the decision. But I don't think there's sort of evidence in the record one way or another about what happened after the garbled documentation came out. But in terms of the sort of factual findings that the board relied on, that led the board to conclude that sort of the administrative judge had a firm conviction that Ms. Gallegos would have been terminated regardless of her disclosure, was the findings of the repeated unprofessional and disruptive conduct. And there is substantial evidence in the record to support those findings, both in the testimony of Ms. Gallegos herself, the testimony of her first-line supervisor, Ms. Stanbro, the testimony of her second-line supervisor, Mr. Pruitt, who ultimately made the decision to terminate her. And I believe her third-line supervisor, Mr. Witham, also testified. And that's really all the court is reviewing on appeal. You know, this court's function is not to re-weigh the evidence or to determine how it would balance the CAR factors or in terms of determining whether or not the agency improved its case by clear and convincing evidence. It's just a question of whether substantial evidence exists in this record to support how the board weighed that evidence and the credibility, excuse me, determinations that the board made. And I think there can be no question that substantial evidence exists to support that here. Well, on the third CAR factor, what evidence was there on that that supported that would cause that factor, if any, to weigh in favor of termination? Is there none? So, the board found that there was no evidence presented one way or another on the comparator third CAR factor, which I think actually traditionally under federal circuit precedent makes it typically a neutral factor. The board in this case actually decided that the absence of any evidence, she weighted against the agency and nevertheless found that on the balance, the agency still met its burden of proof. So, I think the board sort of gave Ms. Gallegos the greatest benefit of doubt it could have on the other two factors. Your point is that if there was error on the third CAR factor, it would have been in her favor. Exactly, Your Honor. Okay. Well, your opponent focused specifically on the first CAR factor. What's your response on that? So, the first CAR factor is the strength of the agency's evidence in support of the action it took, and the board found that that factor weighed heavily in favor of the agency, that there was strong evidence that Mr. Pruitt had strong evidence that Ms. Gallegos behaved in a disruptive and unprofessional fashion. And it went through a number of examples where the board found that behaved inappropriately and unprofessionally. And in particular, the board found that the sort of the gravamen of that decision was her behavior with her immediate supervisor, Ms. Dambro, on March 7th, sort of yelling at her during the call and hanging up. And then the evidence that she was not working during her overtime hours, which was corroborated by her own testimony. And then the meeting on March 9th, where she again, sort of, that meeting was called so she could have an opportunity to explain what happened on March 7th. And instead, she behaved in a very hostile fashion. She yelled, and that because she behaved loud and unprofessionally, that's when Mr. Pruitt terminated that meeting. And the evidence supporting those findings is in the testimony of Mr. Pruitt, Mr. Dambro, and Ms. Gallegos herself. And so substantial evidence supports the board's conclusion that she behaved in an unprofessional fashion and that that is why Mr. Pruitt decided to terminate her. If there are no other further questions, we would ask that the court affirm. All right. Thank you, counsel. We'll hear rebuttal now. Um, we would like the court to consider the direct evidence of retaliation in this specification for which Ms. Gallegos was terminated. And that is, quote, deliberately making false statements about others. Mr. Pruitt testified that his decision was based upon the log that he had maintained since November of 2019 at the direction of Mr. Witham. But there's no allegation of a false statement in that law. So this deliberately refusal to hire the fully qualified disabled veteran. I mean, that's that's an inference that a trier of fact could draw. But we're not the trier of fact. And the trier of fact did not draw that inference. We believe that this is part of the entire record. Now, Mr. Pruitt testified that Ms. Gallegos did not tell him that Mr. Lisinski had committed any hiring improprieties, but he testified he could not recall if anyone else had told him about any hiring improprieties. So the immediacy between her report of misconduct by Mr. Lisinski and the next business day being fired based upon a charge of deliberately making false statements, we believe that is evidence. Counsel, what is the standard of review by which we are reviewing this case on appeal? Say again. What is the standard of review that we use to review this case on appeal? Supported by country to law or supported by substantial evidence. We believe that the evidence as a whole taken together proves that the action was taken because of her report of Mr. Lisinski's refusal to hire the disabled veteran and his order. And we also believe that the errors in misapplication or failure to apply the warning call factors and the use of pure speculation regarding the post-termination reprisal in evidence. Thank you, Your Honor. All right. Thank you, Counsel. The case just argued will be submitted, and that completes our calendar for this morning, and the court will stand in recess. Thank you very much.
judges: COLLINS, MENDOZA, DESAI